Nicholson, C. J.,
delivered the opinion of the Court.
This is an action of ejectment, tried at the June Term, 1866, of the Circuit Court for Wilson county. Plaintiffs claim the tract of land of two hundred acres, *33 sued for, as the heirs of Walter Clopton, deceased. The defendants are the widow of John A. Clopton; a son of Walcer Clopton, and P. and T. Harris, who claim a portion of the land as purchasers from John A. Clopton.
The questions for our determination arise upon the construction of the will of Walter Clopton.
It appears from the facts, as agreed upon, that Walter Clopton made his will in 1832, and died in 1834; that at his death he left seven children, and the children of a deceased son, and his widow, surviving him. It appears that all the children of Walter Clopton were dead at the institution of the suit; his daughters, Eleanor and Martha, and his son, John A., without issue; the others leaving children, who are the plaintiffs in the action. It appears that John A. took possession of the land upon the death of Walter Clopton’s widow, to whom it was devised for life, and that he claimed it absolutely until his death, in 1863, and died, leaving his widow in possession; and that in 1839 and 1842, he sold about forty-three acres of the land to Arbuckle and Wortham, who, in 1845, sold to defendants, P. and T. Harris, who have been in adverse possession, under the deeds of John A., to the bringing of the suit.
The questions for determination arise upon the seventh clause of Walter Clopton’s will, as follows: “I give unto my son, John A. Clopton, one horse; also one saddle and bridle, which he has in possession; also one bed and furniture, which he now has in possession; also the blacksmiths’ tools and shop, with the appurtenances, arid the house in which he now lives; also, I lend unto my son, John, during his natural life or resignation, all the bal- *34 anee of my land and appurtenances that is not deeded or willed after the death of my wife, in this my will, and at his death or resignation, to revert to the lawful begotten. heirs of his body.”
Our first duty is to ascertain the intention of the testator, and to carry it into effect, unless that intention contravenes some fixed rule of law. Although this clause of the will is somewhat inartificially drawn, and expressed in language not entirely clear from ambiguity, we have no real difficulty in comprehending the purpose and intention of the testator. His object, to make an absolute gift of the personal property specified to his son, John, is clear of all doubt. It is equally clear, that he did not intend to make to him an absolute gift, even for life, of his land; but he intended to give him the right to use, occupy and enjoy it during his life, or until he should resign such use, occupation and enjoyment; and then he intended it to go to John’s children. His purpose to provide for the comfortable support of his son, John, by giving him the use of the land, is obvious; but at the same time, his object was to secure the lands ultimately to his son’s children. The will was evidently prepared under the expectation that his son, who had then been married but a short time, would have children; and, under this expectation he made no provision for the disposition of the land, in the event he should die without .children.'*. It follows, that, as John only took an equitable interest for life in the land, whereas the devise to his heirs gives to them the legal title, the rule in Shelly’s Case has no application. The words, “heirs of his body,” were used as words of purchase, and not of lim *35 itation. Loving v. Hunter, 8 Yerg., 4; Settle v. Settle, 10 Hum., 474; Vaden v. Hance, 1 Head, 300: Polk v. Faris, 9 Yer., 210.
Having ascertained that the testator intended to give to his son, John, only an equitable interest in the land, the question is presented, in whom was the legal title vested after the death of the testator, and until the' death of John, the tenant for life? As the testator did not divest himself of any portion of his title during ■ his life by the execution of his will, and, as at the time of his death he was vested with the entire fee simple estate, it follows, that, upon his death, the equitable title, after his widow’s death, passed to his son, John, for life; but the legal title was not disposed of, except upon the contingency of his son, John, having heirs of his body. During the interval between the death of the testator and his son, John, the legal title, so far as' it was controlled by the will, was undisposed of. As the law favors the vesting of titles, and discourages their abeyance, never admitting it but from necessity, (4 Kent, 259,) it is clear that the title followed the rules of descent ip cases of intestacy, and vested in the heirs of the testator living at the time of his death. If the heirs of the testator took no vested interest, but if the vesting in interest depended upon a contingency, which, by possibility, might never happen, they took a bare or naked possibility. It was mere hope or expectation, such as an heir apparent has during the life of his father, and of course could not be disposed of. Exum v. Davie, 1 Murphy, 484; 4 Kent, 260; Adams v. Chaflin, 1 Hill, (S. C.,) 265. But if the vesting in possession only, depended on a contingency, *36 which, by possibility, might never happen, they took a possibility connected with an interest; or, which is the same thing, there was a present interest in existence, although the taking effect of that interest in possession depended on a future event. It is well settled that such an interest is descendible, releasable, assignable, and devisable. Exum v. Davie, 1 Murphy, 484; 4 Kent, 257; 2 Washb. Real Prop., 263.
This was the character of the interest of the heirs of the testator, upon his death. They took the legal title by descent, subject to the equitable life estate of John, and liable to be entirely divested of their title by the death of John with bodily heirs. It was, therefore, a contingent remainder or reversion. 2 Blk. Com., 169; 4 Kent, 208; 2 Washb. Real Prop., 236. Their title was not a mere expectation, not a mere possibility of revert-er, but a present interest or reversion, liable to be defeated by the death of John with heirs of his body, and capable of being ripened into a perfect title in possession by the death of John without bodily heirs. This interest being transmissable, assignable and releasable, it follows, that, at his death without bodily heirs, John’s title to his own share, and to that assigned to him by his brother William, and to his proportion of the shares of his deceased sisters, Martha and Eleanor, was made absolute by the non-happening of the contingency on which the consummation of the title depended. In like manner, the titles of the plaintiffs to the residue of the land were consummated and perfected; and upon the death of John intestate and without children, his portion of the land descended to the plaintiffs, his heirs, subject to the con *37 veyances to Arbuckle and Wortham, and to the widow’s dower, and to the claims of creditors.
The judgment of the Circuit Court will be reversed, and a judgment rendered here in accordance with this opinion.